# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

## PACER Cover Sheet
## for Electronically Filed Documents

Any data shown here are current as of  06/10/06      . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

---

| | |
|---|---|
| **Case Title:** | Paul H. Ross |
| **Case Number:** | 04-11069 |

---

### Document Information

| | |
|---|---|
| **Description:** | Findings of Fact and Conclusions of Law by Re: [9-1] Motion To Dismiss Bankruptcy by United States Trustee . |
| Received on: | 2005-11-10 16:15:45.000 |
| **Date Filed:** | 2005-11-10 00:00:00.000 |
| **Date Entered On Docket:** | 2005-11-15 00:00:00.000 |

---

### Filer Information

| | |
|---|---|
| **Submitted By:** | Patti Hennessy |

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date.  To confirm that nothing has changed since then, review the docket.**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

In re:   PAUL ROSS,                                             No. 7-04-11069 MS

Debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER is before the Court on the Motion to Dismiss Under 11 U.S.C. § 707(b) or in

the Alternative, to Convert to Chapter 13 ("Motion to Dismiss"), filed by the United States Trustee.

The Court held a final hearing on the Motion to Dismiss on August 15, 2005 and took the matter under

advisement.  Leonard Martinez Metzgar represented the United States Trustee, and Douglas Booth

represented the Debtor, Paul Ross.  After considering the evidence presented at the final hearing and

reviewing the documents contained in the case file, the Court finds that  there has not been a substantial

abuse of the provisions of Chapter 7.  Consequently, the Court will deny the United States Trustee's

Motion to Dismiss.   In making this determination, the Court hereby enters the following findings of fact

and conclusions of law in accordance with Rule 7052, Fed.R.Bankr.P.

FINDINGS OF FACT

1.  Debtor filed a voluntary petition under Chapter 7 of the bankruptcy code on February 18,

2004.  He is 55 years old.

2.  Debtor is married.  His wife did not join the petition for bankruptcy.

3.  Debtor's non-filing spouse is not obligated on any of Debtor's debts.  *See* Schedule H

(reporting that debtor has no co-debtors).

4.  Debtor listed unsecured, non-priority claims in the total amount of $38,160.97 on his

1

Schedule F.    The majority of the debt is represented by credit card debt for consumer, non-business

purchases.    The majority of Debtor's unsecured debt was incurred during a previous marriage which

was dissolved in 1992.

5. Debtor's Schedule A lists no real property.

6.  Debtor's non-filing spouse is the owner of their residence.  *See* UST Exhibit 5(a)  - Note

and Mortgage listing Patrice Tobal as borrower.

7.  Debtor and his non-filing spouse were married in April of 2003.  Prior to their marriage,

they entered into a Premarital Agreement whereby they agreed to keep any properties owned by either

of them prior to their marriage sole and separate.   The Premarital Agreement also provides that each of

them will contribute "amounts agreeable to them per month" to pay the mortgage obligation on the

residence, and that each "shall contribute relatively equal amounts to pay all normal and routine

household expenses."  (UST - Exhibit 4, Premarital Agreement, ¶¶ 15. and 16.).

8.  Pre-petition, Debtor contributed $750.00 per month toward his share of the household

expenses, although some months he was unable to contribute that amount.  (Testimony of Paul Ross).

Post-petition, Debtor has been contributing $750.00 per month, and sometimes more, toward

household expenses.  Most pay periods, he contributed $500.00. (Testimony of Paul Ross).

9.  Debtor's non-filing spouse maintains her own credit cards, and makes the payments

associated with those credit cards.

10.  As of the date of the filing of the Debtor's bankruptcy petition, Debtor worked as the

2

acting shift manager of table games at Camel Rock Casino.[1]  *See* Schedule I.

11.  As part of his job, Debtor traveled to other casinos throughout the state and elsewhere to assess the types of gaming opportunities other casinos offer so that the casino he worked for could remain competitive in the market.  (Testimony of Paul Ross).   He incurred expenses on these trips that are not always reimbursed by his employer.  (Testimony of Paul Ross).

12.  Debtor's Schedule I reports that Debtor's net monthly income is $2,308.00, and that  the net monthly income of his non-filing spouse is $735.00.

13.  Because Debtor and his non-filing spouse maintain separate checking accounts and maintain separate finances, Debtor completed his Schedule I based on the most recent filed tax return, the joint tax return from 2002.   The 2003 tax return reflects income from capital gains in the amount of $194,636.00, and income from real investments and trusts in the amount of $58, 981.00 attributable to Debtor's non-filing spouse.  *See* UST Exhibit 2(a).   Subsequent tax returns reflect that Debtor's non-filing spouse earns income from certain investments and trusts, some of which reflect passive losses sufficient to negate her reported capital gains. *See* Debtor's Exhibit G (Tax Return from 2004).

14.  Debtor's non-filing spouse maintains a checking account with her sister as co-owner which reflects average monthly deposits in the approximate amount of $6,000.00.  *See* UST's Exhibit 7(a) - (i).

15.  Debtor's Schedule J reports total monthly expenses in the amount of $5,637.00, including

---

[1]At the final hearing on the Motion to Dismiss, Debtor reported that he resigned from his position at Camel Rock Casino after nine and one-half years, and obtained new employment at Sandia Casino as a craps dealer, beginning August 16, 2005.

3

the following:

> a) an expense of $1,250.00 per month representing credit card payments of his non-filing spouse. Debtor does not contribute to these payments;
>
> b) an expense of $850.00 per month for installment payments on vehicles. Of this amount, $449.00 is attributable to Debtor's payment on his Oldsmobile; the remainder represents the monthly payment on a Toyota truck Debtor's non-filing spouse pays on behalf of her daughter;[2]
>
> c) an expense of $100.00 for support of additional dependents not living in the Debtor's home. Debtor's non-filing spouse makes this payment of her daughter's expenses; and
>
> d) an expense for $1,182.00 for mortgage payment. This is the full amount of the regular monthly mortgage payment.

16. Debtor participated in a 401(k) retirement plan in which he currently has approximately $14,500.00

17. Debtor's Schedule I reflects a 401(k) contribution of $301.00 per month. Of this amount approximately $126.00 represents voluntary contributions to his 401(k) plan. The remainder represents the repayment on a 401(k) loan. The loan repayment deductions from his paycheck are not voluntary. (Testimony of Paul Ross).

18. Prior to filing for bankruptcy protection, Debtor spoke with a debt counseling service by phone, but did not meet with them in person.

## ANALYSIS AND CONCLUSIONS OF LAW

1. Pursuant to 11 U.S.C. § 707(b), upon motion by the United States Trustee, the Court may

> dismiss a case filed by an individual debtor under this chapter whose debts are

---

[2]As of the hearing date, the loan on the Toyota truck had been paid off.

4

primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter.

11 U.S.C. § 707(b).

2.  The debtor enjoys a presumption in favor of granting the relief requested under the chapter of the bankruptcy code he or she chose to file.  11 U.S.C. § 707(b).

3.  The trustee bears the burden of proving substantial abuse under 11 U.S.C. § 707(b).  *In re Higuera,* 199 B.R. 196, 200 (Bankr.W.D.Okla. 1999).

4.  The debts identified in the Debtor's statements and schedules are primarily consumer debts.

5.  Within the Tenth Circuit, the standard for determining whether there has been a substantial abuse sufficient to warrant dismissal pursuant to 11 U.S.C. § 707(b) is the "totality of circumstances." *In re Stewart,* 175 F.3d 796, 809 (10th Cir. 1999).     Ability to pay is a primary factor in considering whether substantial abuse has occurred, but other factors are relevant, and the totality of circumstances may result in dismissal for substantial abuse even when the debtor is unable to pay.  *Id.*     Relevant additional factors include, but are not limited to, 1) whether the debtor has suffered any unique hardships, sudden illness, or other calamity; 2) whether the debtor has a stable source of future income; 3) whether the debtor made excessive cash advances and consumer purchases far in excess of his ability to repay; 4) whether the debtor maintains an unreasonable or excessive household budget; and 5) the debtor's good faith in seeking debt relief under the Bankruptcy Code.  *Id.*

6.  It is difficult based on the Debtor's statements and schedules to get a complete and accurate picture of the Debtor's financial condition.  This is due, in part, to the fact that the Debtor and his non-filing spouse maintain their financial affairs separately as required by their pre-nuptial agreement.

5

7.    In considering a motion to dismiss under 11 U.S.C. § 707(b), the income attributable to the

non-filing spouse is relevant.  *See In re Rysso,* 321 B.R. 522, 526 (D.Minn. 2005); *In re Reese,* 236

B.R. 371, 375 (Bankr.N.D.Ohio 1999); *In re Messenger,* 178 B.R. 145, 149 (Bankr.N.D.Ohio

1995) ("When only one spouse files for chapter 7, the assets, liabilities, and future income prospects of

the non-filing spouse are factors to be considered in applying § 707(b).") (citations omitted).

8.    However, when the debts of the Debtor are not co-obligations of the non-filing spouse,

creditors of the Debtor did not rely on the income of the non-filing spouse in extending credit, and,

therefore, the income of the non-filing spouse should not be made liable for the Debtor's obligations.

*Messenger,* 178 B.R. at 149 (noting that where creditors did not rely on income of non-filing spouse in

extending credit, the bankruptcy court should not "reconfigure the terms on which credit was extended

to individuals into *ex post factor* joint and several obligations.").  Therefore, in considering the non-

filing spouse's income, the Court should determine the extent to which the non-filing spouse contributes

to defray the household expenses.  *See Reese,* 236 B.R. at 375 ("'[I]n calculating whether there is

discretionary income available to fund a plan one must, of necessity, observe to what degree a debtor's

daily living expenses are shared as co-obligations of the non-debtor spouse or are assumed completely

by that spouse . . . . To be clear, the non-debtor spouse's income is not being rendered liable for the

debts of the Debtor bur rather is simply being considered in determining whether the Debtor himself has

available discretionary income by virtue of the fact that he and the non-debtor spouse share a joint

household.'") (quoting *In re Berndt,* 127 B.R. 222, 225 (Bankr. D.N.D. 1991)); *Rysso,* 321 B.R. at

526 (discussing various approaches to the consideration of the non-debtor spouse's income, and

concluding that the income of the non-filing spouse "should only be considered as a reduction in joint,

6

household expenses, but cannot be considered as an increase in income.").

9.  If the Court were to accept the expenses listed on the Debtor's Schedule J as the total monthly household expenses, and simply divide those expenses in half, the Debtor's share of the household expenses exceeds his net monthly take home pay.  ($5,367.00 divided by 2 = $2,683.50 which is greater than the $2,308.00 net take home pay reported on Schedule I).  Even if Debtor were not allowed to continue making contributions to his 401(k) plan, Debtor's share of the expenses would exceed his net take home pay by approximately $74.00.  ($2,308.00 plus $301.00 401(k) contribution = $2,609.00).  Under this computation, Debtor has no disposable income with which he could fund a Chapter 13 plan.

10.  However, if, as the United States trustee urges, the separate expenses of Debtor's non-filing spouse, such as the $1,250.00 monthly payment for her separate credit cards, the $100.00 payment for her daughter's expenses, and the $401.00 car payment are not included in the total expenses, Debtor's one-half share of the expenses totals $1,808.00, leaving him with net disposable income in the approximate amount of $500.00 per month.  A $500.00 monthly payment contributed to a Chapter 13 plan for thirty-six months would result in a meaningful repayment of Debtor's unsecured debts.

11.  Based on Schedule I, the monthly income attributable to Debtor's non-filing spouse is $735.00.  At trial Debtor testified that his spouse is responsible for payment of her own credit card bills, a car payment, and a $100.00 monthly payment to her daughter.  Based on the amount reported in Schedule I, Debtor's non-filing spouse's expenses far exceed her income.  Yet statements from a checking account the Debtor's non-filing spouse shares with her sister reflect monthly deposits in the

7

average amount of $6,000.00, and a tax return from 2003 shows significant investment income

attributable to the Debtor's non-filing spouse. *See* UST's Exhibit 7(a) - (i); UST Exhibit 2(a). The

Court can infer based on this information that Debtor's non-filing spouse uses some of this income to

pay for her own expenses and for joint household expenses. Nevertheless, it is not entirely clear based

on the evidence before the Court how the Debtor and his non-filing spouse meet their monthly

expenses.

12. In practice, spouses rarely split their expenses exactly in half. Here, in accordance with

the prenuptial agreement between the Debtor and his non-filing spouse, Debtor and his non-filing

spouse have agreed to maintain separate finances, to contribute to the monthly mortgage payment in an

amount agreeable to them both and to share other household expenses roughly equally. In *Reese,* the

Court assumed that the debtor's non-filing spouse contributed one-third to one-half of the joint

expenses. *Reese,* 236 B.R. at 376. Using this as a guideline, the figures breakdown as follows: 1)

expenses in the amount of $1,751.00 attributable solely to the Debtor's non-filing spouse are deducted

from the monthly expenses, leaving a balance of $3,616.00; and 2) assuming the Debtor's non-filing

spouse pays one-third of these expenses, Debtor is responsible for the remaining $2,410.66 of the joint

household expenses. Under this analysis, because his net monthly income is $2,308.00, Debtor would

not have disposable income left with which to fund a Chapter 13 plan.

13. The various computations above show that the Debtor either has a significant surplus, or

no disposable income at all with which to fund a Chapter 13 plan. This is partly the result of the

Debtor's not having access to his spouse's financial information or affairs as he agreed pursuant to their

pre-nuptial agreement when he completed his statements and schedules filed in his individual petition. It

8

is extremely important that debtors completely and accurately report all information on their statements and schedules because the trustee, creditors and the Court must be able to rely on such information. *See In re Riley,* 128 B.R. 567, 570 (Bankr.N.D.Okla. 1991) (noting that "'Section 727(a)(3), (a)(4) and (a)(5) deal with the fundamental necessity in bankruptcy that statements and schedules filed pursuant to section 521 be accurate and reliable. . . .'" ) (quoting *In re Lunday,* 100 B.R. 502 (Bankr.D.N.D. 1989)); *In re Tully,* 818 F.2d 106, 110 (1st Cir. 1987) (it is incumbent upon debtors to supply  "complete, truthful and reliable information."); *In re Blair,* 214 B.R. 257, 258 (Bankr.D.Me. 1997) ("The debtor's sworn schedules have significant evidentiary weight when applying the totality of circumstances test under § 707(b).") (citation omitted).   Testimony and other evidence submitted at the final hearing on the Trustee's Motion to Dismiss uncovered certain discrepancies on the Debtor's statements and schedules.

14.  In  *In re Green,* 934 F.2d 568 (4th Cir. 1991), a case adopting the "totality of circumstances" approach to motions to dismiss under 11 U.S.C. § 707(b), and a case relied upon by the Tenth Circuit in *Stewart* in adopting the "totality of circumstances" test,  the Fourth Circuit found that a debtor's excess income, alone, is insufficient to serve as grounds for dismissal under 11 U.S.C. § 707(b). *Green,* 934 F.2d at 572 ("[I]n light of the statutory presumption that a debtor's Chapter 7 petition should be granted, solvency alone is not a sufficient basis for a finding that the debtor has in fact substantially abused the provisions of Chapter 7."). *See also, In re Higuera,* 199 B.R. 196 (Bankr.W.D.Okla. 1999) (concluding that dismissal for substantial abuse was not warranted under totality of circumstances test, even though debtor had an ability to pay; other circumstances, such as the fact that the debtor filed his petition due to a divorce that left him with all the debt from the former

9

marriage and without the family home showed that there was no substantial abuse).

15.    In applying the other factors to this case that are relevant to determining substantial abuse under 11 U.S.C. § 707(b), the Court is not persuaded that there has been a substantial abuse sufficient to warrant dismissal of Debtor's Chapter 7 proceeding.  Although the Debtor has not suffered any unique hardship, calamity or illness, and although the debtor likely has a stable source of future income, most of his credit card debt occurred during his prior marriage.  He has attempted to pay these outstanding credit card balances for several years before resorting to bankruptcy, and he did so after consulting with a credit counseling company, though he took no further steps after making initial inquiries.  He has not continued to make significant credit card purchases of consumer goods.  His budget is not excessive.  He does not maintain an extravagant lifestyle.  He drives a modest vehicle. He is 55 years old and has accumulated only $14,500.00 in his 401(k) pension plan.  The Court finds that it is not unreasonable under these circumstances to include his contributions to his retirement plan as part of the Debtor's reasonable expenses.  *See In re Vansickel,* 309 B.R. 189, 204-210 (Bankr.E.D.Va. 2004) (discussing different approaches to retirement contributions, noting that the test for substantial abuse under § 707(b) under the totality of circumstances standard is not identical to the standard for determining disposable income under § 1325 for purposes of funding a chapter 13 plan, and concluding that there should not be a *per se* rule that retirement contributions be disallowed in considering dismissal under § 707(b)).      While some discrepancies appeared in the Debtor's statements and schedules, such as no interest in real property reported on Schedule A, and a mortgage payment reflected in Schedule J, and even though questions about his non-filing spouse's income and expenses remain somewhat unexplained, the Court is not persuaded that this Debtor's bankruptcy

10

proceeding should be dismissed for substantial abuse.    The focus of the Court's inquiry must be on the

financial circumstances of this Debtor, his apparent reasons for seeking relief under the bankruptcy

code, and his ability to repay creditors.  It does not appear that the Debtor can make a significant

repayment of his debts based on his present income and share of reasonable household expenses, nor

does it appear that the Debtor is enjoying an excessive lifestyle at the expense of his creditors.    As

noted by the Bankruptcy Court in *In re Pollard,* 296 B.R. 531 (Bankr.W.D.Okla. 2003), given the

presumption in favor of granting the Debtor the relief he requests, "'the court should give the benefit of

any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present.'" *Pollard,*

296 B.R. at 536 (quoting 6 Collier on Bankruptcy ¶ 707.04[5][a] at 707-26 (Lawrence P. King, ed.,

15th ed.2001)(footnotes omitted)).

Based on the foregoing, the Court concludes under the totality of circumstances standard that

there has not been a substantial abuse.  The United States Trustee's Motion to Dismiss will, therefore,

be denied.    This memorandum constitutes the Court's findings of fact and conclusions of law entered

pursuant to Rule 7052, Fed.R.Bankr.P.  An appropriate order will be entered.

_____

MARK B. McFEELEY
United States Bankruptcy Judge

11

I certify that on the date shown on the attached
document verification, a true and correct copy of
the foregoing was either electronically transmitted,
faxed, delivered or mailed to the listed counsel
and/or parties.

Douglas Booth
Attorney for Debtor
1223 St. Francis Dr. #C
Santa Fe, NM 87505

Leonard Martinez-Metzgar
Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103

Patti G. Hennessy
Law Clerk
(505) 348-2545

12